**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **ANNIE BLUE,**      **Plaintiff,** )<br>)<br>) | |
| **v.** ) | <mark>**CASE NO:** _____</mark> |
| ) | |
| **ALABAMA DEPARTMENT OF ECONOMIC AND COMMUNITY AFFAIRS ("ADECA");** ) | **JURY TRIAL DEMANDED** |
| **LAMAR CONSTRUCTION CO. OF LOUISIANA, L.L.C.;** ) | |
| **MARK SOILEAU, individually and in his capacity as contractor/agent;** ) | |
| **CAVCO MANFACTURING, LLC f/k/a FLEETWOOD HOMES, INC.;** ) | |
| **BOSARGE'S MOBILE HOME SALES, LLC;** ) | |
|      **Defendants.** | |

## COMPLAINT

**COMES NOW**, Plaintiff Annie Blue ("Plaintiff" or "Ms. Blue"), by and through her undersigned counsel, and files this Complaint against the above-named Defendants, and in support thereof states as follows:

## PRELIMINARY STATEMENT

This is an action arising from the delivery, installation, and acceptance by Defendants of a used, defective, and improperly installed manufactured home in place of the new, habitable replacement home to which Plaintiff was entitled under

the Home Recovery Alabama Program ("HRAP"), a federally-funded disaster recovery program established with Community Development Block Grant – Disaster Recovery (CDBG-DR) funds administered by the Alabama Department of Economic and Community Affairs ("ADECA"). Plaintiff Annie Blue—a victim of Hurricane Sally and/or Hurricane Zeta—applied for, qualified for, and was awarded grant funding totaling $218,713.39 for the replacement of her storm-damaged home located at 2700 Old Montgomery Highway, Selma, Alabama 36703 (Application No. AL-HRAP-573527). Despite executing binding agreements and vacating her existing home in reasonable reliance upon representations made by Defendants, Plaintiff received a used and structurally deficient manufactured home that fails to meet minimum habitability standards, was not new as contracted and represented, and was accompanied by undisclosed material conditions and terms that effectively extinguished her right to seek legal redress. The Alabama Manufactured Housing Commission ("AMHC") Set-Up Inspection Report dated April 26, 2024, critically reflects that both the "NEW" and "USED" boxes are checked for the unit delivered (Serial No. 9260AB, HUD Label No. GEO1616650-51), raising serious questions as to whether the home delivered was new as required. Additionally, Defendants failed to establish or provide Plaintiff with proper contractor insurance documentation as required, and the title issued for the manufactured home does not match the unit physically present on Plaintiff's property.

## PARTIES

1.    Plaintiff Annie Blue is an individual citizen of the United States who resides at 2700 Old Montgomery Highway, Selma, Alabama 36703, in Dallas County, within the Middle District of Alabama. At all times relevant to this action, Ms. Blue was and is the lawful owner of the real property located at the above address, which is situated in Dallas County, Alabama (Tax Account No. 0000517685; Parcel Bk. 001506, Pg. 000396).

2.    Defendant Alabama Department of Economic and Community Affairs ("ADECA") is a state agency of the State of Alabama, headquartered at 401 Adams Avenue, Montgomery, Alabama 36104, and operates throughout this District. ADECA was designated as the Grantee and administering entity for CDBG-DR funds allocated through the United States Department of Housing and Urban Development ("HUD") for the purpose of assisting the State of Alabama to recover from the impacts of Hurricanes Sally and Zeta. ADECA established, administered, and operated the Home Recovery Alabama Program ("HRAP") at all times relevant to this action. ADECA may be served through its Director at 401 Adams Avenue, Montgomery, Alabama 36104.

3.    Defendant Lamar Construction Co. of Louisiana, L.L.C. ("Lamar Construction") is a limited liability company organized and existing under the laws of Louisiana, doing business in the State of Alabama. Lamar Construction was

selected and retained by ADECA as the General Contractor to perform replacement home construction services in connection with Plaintiff's HRAP award (Application No. AL-HRAP-573527). At all times relevant to this action, Lamar Construction acted as an agent, representative, and contractor of ADECA. Lamar Construction may be served through its registered agent or principal office. Its General Contractor Superintendent is Mark Soileau.

4.    Defendant Mark Soileau ("Soileau") is an individual who, upon information and belief, resides in Louisiana, and at all times relevant acted individually and, in his capacity as a contractor, as an agent of Lamar Construction Co. of Louisiana, L.L.C. At all relevant times, Mark Soileau acted individually and in his capacity as contractor and agent for ADECA, and directly communicated with, directed, and induced Plaintiff's actions in connection with this matter, including specifically inducing Plaintiff to vacate her home approximately thirty (30) days ahead of the contractually agreed-upon date by misrepresenting that early vacation would expedite delivery of her new replacement home. He is sued individually and in his official/representative capacity.

5.    Defendant Cavco Manufacturing, LLC ("Cavco"), successor-in-interest of Fleetwood Homes, Inc. ("Fleetwood") is a corporation organized and existing under the laws of the State of Arizona, headquartered at 3636 N Central Avenue Suite 1200, Phoenix, AZ 85012, licensed to do business and conducting business in the

State of Alabama. Fleetwood is the manufacturer of the manufactured home (Model 28684B "The Summit," a 4 Bedroom / 2 Bath Double-Wide, 1,790 sq. ft., Serial No. 9260AB, HUD Label No. GEO1616650-51, manufactured in or around 2024) that was delivered to Plaintiff's property. Cavco is presumed to have assumed all liabilities of Fleetwood, including any such liabilities resulting from the actions laid forth in this Complaint.

6.      Defendant Bosarge's Mobile Home Sales, LLC ("Bosarge's"), License No. 6981, Certification No. 2620, Decal No. 846463 (and R846463), located at 8550 Highway 90, Irvington, Alabama 36544, is a domestic entity doing business in the State of Alabama as a manufactured home retailer, transporter, and installer. Bosarge's was the retailer and installer of the manufactured home (Serial No. 9260AB) delivered to Plaintiff's property and was responsible for the set-up and installation of said home at 2700 Old Montgomery Highway, Selma, Alabama 36703. The set-up inspections were conducted by AMHC Inspector Ralph Sheperd on April 26, 2024, and May 22, 2024.

### JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action arises under 42 U.S.C. § 1983, the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., the HUD-administered manufactured home construction and

safety standards (24 C.F.R. Part 3280), the CDBG-DR program regulations (24 C.F.R. Part 570), and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

8.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims as to form part of the same case or controversy.

9.  Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, the subject property is located within this District at 2700 Old Montgomery Highway, Selma, Alabama 36703 (Dallas County), and Defendant ADECA maintains its principal operations within the Middle District of Alabama.

## FACTS

### A. Background: Hurricane Damage and Program Application

10.  Plaintiff Annie Blue is a homeowner who, prior to Hurricanes Sally and Zeta, owned and occupied a manufactured home located at 2700 Old Montgomery Highway, Selma, Alabama 36703 ("the Property"). The Property is located in Dallas County, Alabama, and has a pre-storm assessed value of $2,000.00, as reflected in program records.

11.  On September 16, 2020, Hurricane Sally made landfall on the Alabama Gulf Coast, resulting in the federal disaster declaration FEMA-4563-DR. On October 28,

2020, Hurricane Zeta made landfall in Alabama, resulting in federal disaster declaration FEMA-4576-DR.

12.    As a direct result of one or both of these qualifying storm events, Plaintiff's manufactured home located at the Property was severely damaged and destroyed, rendering it uninhabitable and necessitating its replacement. The damaged structure was classified as a Mobile/Manufactured Home, and the damage rendered it not suitable for rehabilitation, resulting in a Replacement benefit determination.

13.    In response to widespread destruction caused by Hurricanes Sally and Zeta, and following formal requests from the Office of Congresswoman Terri Sewell and other elected officials, the federal government authorized the allocation of Community Development Block Grant – Disaster Recovery (CDBG-DR) funds to the State of Alabama for housing assistance.

14.    ADECA was designated as the Grantee and administering entity for these federal CDBG-DR funds. ADECA established the Home Recovery Alabama Program ("HRAP") to repair, reconstruct, or replace eligible single-family residences, including manufactured homes, damaged by Hurricanes Sally and/or Zeta. HRAP is funded through CDBG-DR funds and is subject to all applicable State and Federal laws, rules, and regulations as defined in the Code of Federal Regulations (CFR), including HUD regulations governing administration of CDBG-DR funds (24 C.F.R. Part 570) and HUD manufactured housing construction and

safety standards (24 C.F.R. Part 3280), as well as the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

15.    Plaintiff applied for HRAP assistance. As part of her application, Plaintiff provided information regarding household income, occupancy, ownership of the damaged property, and funds received from other sources. ADECA relied on this information to determine Plaintiff's eligibility, award type, and award amount. Following a site assessment and eligibility review, Plaintiff was deemed qualified and eligible for a Replacement Award—specifically, a new Mobile/Manufactured Home (Doublewide 4 BR/2 BA) replacement for the structure destroyed at the Property (Application ID: AL-HRAP-573527).

16.    As reflected in the Duplication of Benefits (DOB) Calculation (Exhibit A to the Grant Agreement), Plaintiff's prior assistance received totaled $6,333.19 (including $3,852.79 in FEMA Individual Assistance and $2,480.40 from private insurance). Total offsets to benefits were $38,235.08, including $37,540.06 in inspection-verified repairs and $695.02 in funds provided for a different purpose. The pre-award DOB calculation showed $0.00, and the remaining DOB was $0.00, resulting in no DOB deduction from Plaintiff's award.

**B. The Grant Agreement and Representations**

17.     On or about February 1, 2024, Plaintiff received an Award Notification Letter from HRAP confirming that she had been selected to receive a grant award (Certificate of Award for New Home, dated February 2, 2024).

18.     On February 2, 2024, Plaintiff executed the Home Recovery Alabama Program Homeowner Grant Agreement ("the Agreement") with ADECA (Application ID: AL-HRAP-573527). The Agreement identified the Award Type as "Replacement" and the structure type as a Mobile/Manufactured Home, Doublewide, 4 Bedroom / 2 Bathroom. The Agreement was signed by Annie Blue on February 2, 2024. ADECA's second signature line reflects "N/A."

19.     Simultaneously with execution of the Grant Agreement, Plaintiff executed a Homeowner Scope of Work document (dated February 2, 2024) reflecting that she would receive a new double-wide manufactured home with a 4-bedroom/2-bathroom configuration (Fleetwood Homes, Inc. Model "The Summit," Model No. 28684B, 1,790 sq. ft.).

20.     On or about March 6–7, 2024, Plaintiff executed an Addendum to the Homeowner Grant Agreement ("the Addendum," effective March 6, 2024), which confirmed a total grant Award amount of $218,713.39, subject to a three-year Compliance Period beginning on the date the home passes final inspection. The Addendum sets forth monetary penalties for non-compliance: $218,713.39 for the

0–12-month period; $144,350.84 for 13–24 months; and $72,175.42 for 25–36 months.

21.    At all times during the application and contracting process, ADECA, through its agents, contractors, and representatives including Lamar Construction and Mark Soileau represented to Plaintiff that she would receive a new manufactured home that would be properly delivered, installed, and set up to applicable habitability standards and in compliance with all applicable local, state, and federal building codes.

22.    ADECA represented and presented the HRAP grant award to Plaintiff as a disaster recovery benefit, without clearly and fully disclosing to Plaintiff the substantial and material terms, conditions, restrictions, and limitations embedded in the Agreement, including but not limited to:

a. comprehensive waivers of the right to appeal or seek legal recourse (Paragraph 18 of the Agreement);

b. a three-year compliance period restricting sale, encumbrance, or transfer of the Property without prior written consent of ADECA (Paragraph 12);

c. Plaintiff's obligation to repay all or part of the award upon non-compliance, as specifically set forth in the Addendum;

d. broad indemnification provisions in favor of ADECA, the State, and federal agencies, requiring Plaintiff to hold harmless and indemnify ADECA in the event of any legal action (Paragraph 18);

e. the provision that ADECA has the right to issue payment to the Contractor where it has determined that work has been completed, regardless of an assertion by the Awardee that the project has not been completed (Paragraph 16); and

f. the provision that Plaintiff's selection of the standard tub/shower (with no accessibility modifications) on the Reasonable Accommodation Selection Form was binding and not modifiable. These material terms were not adequately disclosed in advance of Plaintiff's signing, preventing Plaintiff from making a fully informed decision.

23. Lamar Construction was identified as the General Contractor in the Pre-Construction Meeting Form. Two versions of the Pre-Construction Meeting Form exist in the record: one executed on or about February 12, 2024 (Applicant Signature dated 2/12/24), and another executed on or about March 7, 2024 (Construction Project Manager Signature dated 3/7/24), reflecting the agreed-upon move-out date of April 8, 2024, utility accounts (Dallas County Water & Sewer Authority Account No. 523; Alabama Power Account No. 58773-80003), and the selection of the Double-Wide 4/2 floor plan.

**C. Plaintiff's Detrimental Reliance and Early Move-Out**

24.    The Pre-Construction Meeting Form agreed upon a move-out date of April 8, 2024. However, Mark Soileau, acting in his individual and agency capacity, induced Plaintiff to vacate her existing home earlier than the scheduled date by specifically representing and assuring Plaintiff that the sooner she moved out, the sooner she would receive and be able to move into her new replacement home.

25.    In direct reliance upon this representation, Plaintiff vacated her existing home on or about March 9, 2024, approximately one month earlier than the contractual move-out date of April 8, 2024. Plaintiff incurred significant relocation costs, temporary housing expenses, and loss of time as a direct result of this induced early vacancy. Plaintiff was also responsible for all costs associated with vacating the storm-damaged property and removing all personal property and furniture, which HRAP declined to cover.

**D. Delivery of an Incorrect and Then Used/Defective Home**

26.    On or about February 14, 2024, a manufactured home was initially delivered to the Property. Plaintiff was advised that this was the incorrect manufactured home. The home was subsequently removed.

27.    In or about May 2024, a second manufactured home was delivered to the Property. This home was identified as Fleetwood Model 28684B "The Summit," a 4 Bedroom / 2 Bath Double-Wide (28 x 68 ft.), Serial No. 9260AB, HUD Label No.

GEO1616650-51, manufactured in or around 2024, and transported and installed by Bosarge's Mobile Home Sales (Installer Certification No. 2620, Decal No. 846463, Retailer License No. 6981).

28. On June 6, 2024, Plaintiff was given the keys to the replacement manufactured home and formally took occupancy.

29. Critically, the AMHC Set-Up Inspection Report dated April 26, 2024, prepared by Inspector Ralph Sheperd, reflects that both the "NEW" and "USED" boxes are checked for this unit (Serial No. 9260AB). The installer certification on that report was not completed at the time of initial inspection. This ambiguity, combined with the other evidence of prior use and defects described herein, supports Plaintiff's reasonable belief and contention that the home delivered was used or previously occupied, not a new unit as contracted and represented.

30. Upon taking occupancy and throughout her continued residence at the Property, Plaintiff discovered numerous significant defects, deficiencies, and conditions evidencing that the home was used and/or not properly installed or finished, including but not limited to:

a. Missing door frame molding at the front door (top and bottom), with scuff marks throughout;

b. Chipped wall molding throughout the home;

c. Stains on the front door panel indicative of prior water drainage;

d.  Spots on the front wall panel near the door;

e.  Inconsistent wall coloring throughout the home, with nails protruding through molding at wall joints;

f.  Gaping molding pieces around the master bedroom door, interior discoloration, and apparent mold growth from moisture;

g.  Punctured holes throughout the living room walls;

h.  Cracked ceilings that had been painted over, with cracks now resurfacing;

i.  Water entering through windows;

j.  No molding around the kitchen island and incomplete cabinetry;

k.  Holes in the wall behind the refrigerator;

l.  Uneven, warped, and split flooring throughout the home, including in the bathroom area;

m. Insulation protruding from ventilator vents; and

n.  Title documents reflect discrepancies between the title issued and the actual unit delivered, as Plaintiff contends that the title does not match the manufactured home physically present on her property.

31.   The AMHC conducted manufactured home set-up inspection reports dated April 26, 2024, and May 22, 2024, both by Inspector Ralph Sheperd. The April 2024 inspection (Decal No. 846463) identified the following uncorrected installation deficiencies:

a.  shearwall pier missing on the front side (Perimeter, Item 3g marked incorrect);

b.  failure to hook up all shearwall straps at the mateline (Shearwall Ties, Item 4e marked incorrect);

c.  daylight endwalls (Item 5, Installation); and

d.  a gap in the mateline floor requiring shimming (Multiwide Connections, Item 6 marked incorrect). Critically, the installer did not certify that corrections had been made on the initial inspection report, the signature and date lines were left blank.

32.    The May 22, 2024 re-inspection (Decal No. R846463) identified ongoing issues including holes in the bottom board at crossovers requiring sealing (Item 4b spacing comment), and noted that multiwide connections were "trimmed out prior to reinspection" (Item 6). The installer again failed to certify that all required corrections were completed, the installer certification signature and date lines were again left blank.

33.    A contractor invoice from Gulf Coast Contracting Solutions (Invoice #2, dated June 5, 2025, totaling $3,000.00, addressed to Lamar Construction Co. of Louisiana, L.L.C., 2700 Old Montgomery Road, Selma, Alabama 36703) documents that Lamar Construction arranged for window inspection and repair work at the Property. The invoice reflects that the contractor inspected the window, found no signs of water intrusion, re-secured the window, caulked its perimeter, reattached

the trim strips, repaired the bathroom vent, and performed other minor repairs to the manufactured home unit, further evidencing that defects acknowledged by the program's own contractor remained unresolved through at least mid-2025. The invoice was due July 5, 2025, with an account balance of $3,000.00.

34.    Additionally, upon information and belief, the total consideration paid by ADECA and HRAP to the contractor for the manufactured home delivered to Plaintiff is substantially less than the $218,713.39 total grant award, resulting in a windfall or surplus to the contractor and/or its affiliates. Defendants also failed to establish or provide Plaintiff with proper contractor insurance documentation and warranty documentation as required under the program and applicable law.

**E. Annie Blue's Documented Complaints and Efforts to Resolve Issues**

35.    On January 3, 2025, HRAP sent a notification of intent to proceed with closeout of Plaintiff's case (Application No. AL-HRAP-573527), noting that the absence of the final program form was impeding closeout. The letter enclosed a final program form for Plaintiff's signature and advised that once closeout was complete, Plaintiff would receive confirmation that the case had been successfully closed.

36.    On January 15, 2025, Plaintiff Annie Blue sent a formal letter to the Home Recovery Alabama Program Team at 1110 Montlimar Drive, Suite 299, Mobile, Alabama 30608, responding to the HRAP closeout letter dated January 3, 2025, and documenting all ongoing unresolved defects in the manufactured home, providing

detailed descriptions of the issues, and requesting that all issues be addressed before final closeout of the case. Plaintiff also provided her current contact information and noted that the letter received from HRAP did not include the referenced form.

37.     In an undated letter addressed "To Whom It May Concern," Plaintiff provided a comprehensive chronological list of all documents presented to her for signature, several of which she signed with unclear information, identifying those she approved and those she did not approve, including: the Conflict of Interest Disclosure Form (July 11, 2023); Release of Liability Form (July 11, 2023); Award Notification Letter (February 1, 2024); Certificate of Award for New Home (February 2, 2024); Homeowner Grant Agreement (February 2, 2024); Reasonable Accommodation Selection Form (March 7, 2024, noted as "Not Approved by Annie Blue"); Certified New Home Onsite (March 14, 2024, noted as "Not Approved by Annie Blue"); Application Certificate of Title–Transfer (March 20, 2024); Certificate of Title for Transfer Manufactured Home (March 22, 2024); AMHC Inspection Report Executed (May 17, 2024, noted as "Not Approved by Annie Blue"); AMHC Inspection Report Not Executed (noted as "Not Approved by Annie Blue"); Modified Assessment Record (August 13, 2024); Home Recovery Final Program Form (August 13, 2024, noted as "Not Approved by Annie Blue"); Letter to HRAP Addressing Issues (January 15, 2025); State of Alabama Checklist Letter (April 30, 2025, "Annie Blue Disagrees"); City of Selma Inspection (May 6, 2025, "Approved

by Annie Blue"); Electrical Home Safety Check (June 13, 2025, "Approved by Annie Blue"); Gulf Coast Contracting Solutions Invoice (June 5, 2025, "Approved by Annie Blue"); Conversations with Charles Rankin (June 5, 2025, "Approved by Annie Blue"); and Application Responsibility During Construction (Date Unknown, "Not Approved by Annie Blue").

38.    Despite Plaintiff's diligent and documented efforts to notify ADECA, Lamar Construction, and other Defendants of the deficiencies in the home, the material issues have not been adequately remedied. Plaintiff has not executed or approved the Home Recovery Final Program Form. The handwritten notes associated with this matter (referencing ADECA contact and concerns including: used and damaged MH; wrong title/does not match MH; value of MH does not seem equal to MH based on damages found; contractor paid and not given to establish insurance) corroborate Plaintiff's contentions regarding the multiple unresolved issues with this HRAP case.

### CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT
*(Against ADECA, Lamar Construction, and Mark Soileau)*

39.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

40.    The Homeowner Grant Agreement executed on February 2, 2024, the Homeowner Scope of Work executed on February 2, 2024, and the Addendum to

the Homeowner Grant Agreement executed on March 6–7, 2024, constitute valid, binding, and enforceable contracts between Plaintiff and ADECA. These agreements obligated ADECA to provide Plaintiff with a new manufactured home (Fleetwood Model 28684B "The Summit," 4 BR/2 BA Doublewide), properly installed and meeting applicable habitability, AMHC, and federal construction standards, in exchange for Plaintiff's compliance with program terms, timely vacation of the Property, and cooperation with the contractor.

41.    Plaintiff fully and timely performed all conditions required of her under the Agreement, including vacating the Property (indeed, vacating approximately one month earlier than required in reliance on contractor representations), cooperating with contractors and inspectors, and complying with program requirements.

42.    Defendants materially breached the Agreement by:

   a. failing to deliver a new manufactured home as represented and contracted;

   b. delivering a home that was used and/or previously occupied, as evidenced by the AMHC inspection report reflecting both "NEW" and "USED" checked, and the numerous defects inconsistent with a new home;

   c. failing to ensure proper installation of the home in accordance with AMHC standards and applicable building codes, as evidenced by two failed state inspections with uncertified corrections;

d. failing to complete corrections identified in mandatory state inspection reports (April 26 and May 22, 2024 AMHC reports);

e. inducing Plaintiff to vacate her home one month early without fulfilling the corresponding promise that early vacation would accelerate delivery of a habitable new home;

f. failing to provide Plaintiff with proper contractor insurance documentation and warranty documentation; and

g. delivering a home with title documents that do not correspond to the unit physically present on Plaintiff's property.

43. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages including but not limited to: receipt of a used and defective home of substantially lesser value than a new replacement home; costs of relocation and temporary housing incurred from March 9, 2024 forward; loss of use and enjoyment of the Property; out-of-pocket expenses incurred in attempting to address the deficiencies in the home; and loss of the full benefit of the $218,713.39 grant award.

44. Plaintiff claims all actual, consequential, and compensatory damages allowable under law.

## COUNT II: PROMISSORY FRAUD / FRAUD IN THE INDUCEMENT
### *(Against All Defendants)*

45. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

46.    At the time Plaintiff entered into the Homeowner Grant Agreement and related documents, and at the time Plaintiff agreed to vacate her prior residence early, Defendants made the following material representations to Plaintiff:

a.  that Plaintiff would receive a new manufactured home (Fleetwood Model 28684B "The Summit," 4 BR/2 BA Doublewide) as her replacement home;

b.  that the home would be properly delivered, installed, and finished in accordance with AMHC standards and applicable law; and

c.  by contractor representative Mark Soileau, that the sooner Plaintiff vacated her existing home, the sooner she would receive and move into her new replacement home.

47.    These representations were false when made. The home delivered to Plaintiff was used, defective, and improperly installed as evidenced by the AMHC inspection reports dated April 26 and May 22, 2024, the numerous cosmetic and structural defects documented upon and after delivery, and the ambiguous "NEW/USED" designation on the AMHC report. The representation by Mark Soileau that early vacation would expedite delivery was made to induce Plaintiff's compliance and cooperation, not because it reflected any genuine operational constraint or benefit to Plaintiff.

48.    Defendants knew, or should have known, that these representations were false at the time they were made. Defendants, including Fleetwood and Bosarge's, knew

or should have known the condition of the home being delivered. Lamar Construction and Mark Soileau knew the state of installation readiness and the true status of the unit. ADECA knew or recklessly disregarded the fact that program funds were being used to deliver a non-conforming or used home to an eligible disaster victim.

49.    The misrepresentations were made with the intent to induce Plaintiff to enter into and comply with the grant agreement, vacate her home ahead of schedule, and accept delivery and possession of the replacement structure without objection.

50.    Plaintiff reasonably relied upon Defendants' representations. Plaintiff signed the Agreement and the Addendum, vacated her home approximately one month earlier than required, and accepted delivery of and initially moved into the replacement home, all in direct reliance upon the above representations.

51.    As a direct and proximate result of Defendants' fraud, Plaintiff has suffered substantial damages, including but not limited to: receiving a used and defective home worth less than the new home contracted for; costs of early relocation and displacement from approximately March 9, 2024 forward; loss of time and income; out-of-pocket repair and remediation expenses; loss of the full benefit of the $218,713.39 grant award; and severe emotional distress and mental anguish.

52.    Defendants' conduct was willful, malicious, and oppressive, and warrants an award of punitive damages.

53.    Plaintiff claims all actual, consequential, compensatory, and punitive damages allowable under law.

### <u>COUNT III: NEGLIGENT MISREPRESENTATION</u>
*(Against ADECA)*

54.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

55.    ADECA, in administering HRAP and in its communications with Plaintiff regarding the nature and terms of the grant award, negligently represented that the funding provided to Plaintiff constituted an unconditional replacement benefit, rather than a complex grant award governed by extensive federal regulatory requirements, compliance obligations, repayment provisions, and legally binding restrictions.

56.    ADECA negligently concealed, omitted, or failed to adequately disclose the following material information prior to obtaining Plaintiff's signature on the Grant Agreement, Addendum, and related program documents:

   a. that acceptance of the award constituted a waiver of Plaintiff's right to appeal all eligibility and funding determinations (Paragraph 18 of the Agreement);

   b. that the Agreement contained broad indemnification provisions requiring Plaintiff to defend and hold harmless ADECA and the State of Alabama in the event of any legal action (Paragraph 18);

c. that the home delivered would be selected and provided at ADECA's sole discretion, with Plaintiff having no meaningful recourse regarding quality or condition, and that ADECA had the right to issue payment to the Contractor regardless of Plaintiff's assertion that the project was not complete (Paragraph 16);

d. that Plaintiff could be required to repay the entire grant amount if she sold or otherwise left the Property within the three-year compliance period, with specific escalating penalties as set forth in the Addendum; and

e. that ADECA did not guarantee the timely or satisfactory completion of work by the Contractor (Paragraph 18).

57. ADECA's failure to fully and clearly disclose these material terms was a breach of its duty of care to Plaintiff as a vulnerable disaster victim seeking disaster recovery assistance, and was calculated to lower the likelihood that Plaintiff would seek legal recourse upon discovering that the replacement home was used, defective, and below the quality represented.

58. Plaintiff reasonably relied upon ADECA's material omissions and representations to her detriment by entering into a binding agreement that significantly restricted her legal rights, including waiver of appeal rights and broad indemnification obligations, without adequate prior disclosure.

59.    As a direct and proximate result of ADECA's negligent misrepresentations and omissions, Plaintiff suffered damages including loss of legal rights, inability to seek full redress under terms of the agreement, receipt of a substandard and used home, and emotional distress and mental anguish.

60.    Plaintiff claims all actual, consequential, and compensatory damages allowable under law.

## COUNT IV: CIVIL RIGHTS CLAIM UNDER 42 U.S.C. § 1983
*(Against ADECA)*

61.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

62.    ADECA is a state agency acting under color of state law at all times relevant to this action. ADECA administered HRAP funds pursuant to a federal block grant (CDBG-DR, 24 C.F.R. Part 570) and exercised governmental authority in selecting, contracting with, and overseeing the parties who delivered and installed Plaintiff's replacement home.

63.    Plaintiff Annie Blue, as a United States citizen and disaster victim, had a constitutionally protected property interest in the HRAP grant award and a protected liberty interest in her right to pursue legal remedies and her right to be free from governmental deprivation of property without due process.

64.    ADECA, acting under color of state law, deprived Plaintiff of the following constitutionally protected rights without due process of law:

a. Plaintiff's property interest in receiving the full benefit of the grant award ($218,713.39) in the form of a new, habitable, properly installed manufactured home as represented and agreed upon;

b. Plaintiff's procedural due process rights, by imposing contractual provisions waiving all appeals and legal remedies (Paragraph 18) without providing meaningful notice of these provisions or a fair opportunity to challenge adverse determinations;

c. Plaintiff's substantive due process rights, by engaging in conduct that was arbitrary, conscience-shocking, and deliberately indifferent to the rights and welfare of Plaintiff as a disaster victim, including approving contractor payment regardless of Plaintiff's assertion that the project was incomplete (Paragraph 16); and

d. Plaintiff's right to equal protection, by applying program benefits, standards, and accountability in a manner that effectively denied Plaintiff the same quality and value of housing recovery assistance received by similarly situated program participants.

65. ADECA's deprivations were the result of an established policy, practice, pattern, or custom of the agency in connection with HRAP administration, including but not limited to: accepting and approving contractor performance without adequate oversight; permitting the delivery of used and defective manufactured homes to

eligible disaster victims; utilizing grant agreement language that effectively immunized the agency from accountability for substandard performance (Paragraph 18); and authorizing closeout procedures while unresolved defects remained outstanding despite documented notice from Plaintiff.

66.    As a direct and proximate result of ADECA's violations of 42 U.S.C. § 1983, Plaintiff has suffered deprivation of federal constitutional rights, actual damages, and irreparable harm.

67.    Plaintiff seeks compensatory damages, injunctive relief directing ADECA to remediate the deficiencies in the replacement home or provide Plaintiff with a conforming new manufactured home, and attorney's fees pursuant to 42 U.S.C. § 1988.

### COUNT V: VIOLATION OF RESPA, 12 U.S.C. § 2601 et seq.
*(Against ADECA and Lamar Construction)*

68.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

69.    The transaction involving Plaintiff's replacement manufactured home constituted a federally funded real property transaction governed by the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., insofar as it involved the use of federal CDBG-DR funds to transfer an interest in real property to Plaintiff.

70.    RESPA and its implementing regulations require that recipients of federally related property transactions receive timely and accurate disclosure of all material

costs, terms, and settlement charges associated with the transaction, so that the recipient can make an informed decision and engage in comparative evaluation.

71.    Defendants ADECA and Lamar Construction failed to provide Plaintiff with a complete, itemized, and accurate disclosure of the material terms and costs associated with the grant-funded home replacement transaction, including but not limited to:

   a. the total cost breakdown between the manufactured home itself and installation/site work;

   b. the actual cost and value of the home delivered relative to the total award amount of $218,713.39;

   c. the identity and compensation of all subcontractors and vendors including Bosarge's and Fleetwood; and

   d. all material terms regarding Plaintiff's compliance obligations, repayment provisions, and limitation of rights, including the waiver of appeal rights and the indemnification obligations in the Grant Agreement.

72.    Defendants' failure to make these disclosures deprived Plaintiff of the ability to evaluate the adequacy and accuracy of the award and the transaction terms, to compare costs and benefits, and to identify any Duplication of Benefits or other irregularities.

73.    As a result of Defendants' violations of RESPA, Plaintiff has suffered actual damages in the amount of the difference between the value of a new home she was entitled to receive and the value of the used, defective home she received, as well as all other damages allowable under 12 U.S.C. § 2607(d).

74.    Plaintiff claims all damages allowable under law.

### COUNT VI: VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### Ala. Code §§ 8-19-1 et seq.
*(Against Lamar Construction, Mark Soileau, Bosarge's, and Cavco Manufacturing)*

75.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

76.    The Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code §§ 8-19-1 et seq., prohibits unfair or deceptive acts or practices in the conduct of trade or commerce.

77.    The conduct of Defendants Lamar Construction, Mark Soileau, Bosarge's, and Fleetwood Homes, including but not limited to:

a. the delivery of a manufactured home that was used or previously occupied while representing it as new;

b. the misrepresentation of the home's status, condition, and provenance in connection with the HRAP replacement program;

c. the failure to remedy documented defects despite proper and timely notice from Plaintiff; and

d. the failure to provide required installer certifications and warranty documentation, constitutes unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the ADTPA.

78. These acts:

a. caused substantial injury to Plaintiff in the form of receipt of a used and defective home, relocation costs, out-of-pocket repair expenses, emotional distress, and loss of the full benefit of the grant award;

b. could not reasonably be avoided by Plaintiff, given her complete reliance on the HRAP program and its contractors; and

c. are not outweighed by any countervailing benefit to competition or consumers.

79. Plaintiff is entitled to actual damages, treble damages for intentional violations pursuant to Ala. Code § 8-19-10, civil penalties of up to $25,000.00 per violation pursuant to Ala. Code § 8-19-11, and attorney's fees pursuant to Ala. Code § 8-19-10.

80. Plaintiff claims all damages allowable under law.

### COUNT VII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY / HUD MANUFACTURED HOUSING STANDARDS
*(Against Cavco Manufacturing and Bosarge's)*

81.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

82.    As the manufacturer of the replacement home (Model 28684B "The Summit," Serial No. 9260AB, HUD Label No. GEO1616650-51), Defendant Fleetwood Homes, Inc. is subject to HUD-administered manufactured home construction and safety standards (24 C.F.R. Part 3280) and applicable Alabama law, as well as the implied warranty of merchantability.

83.    The numerous construction defects documented upon delivery and confirmed by the AMHC inspections on April 26, 2024, and May 22, 2024, including missing/defective molding, water intrusion through windows, cracked ceilings, holes in walls, uneven and split flooring, insulation protruding from vents, and apparent mold—constitute breaches of the implied warranty of merchantability and Fleetwood's obligations under federal manufactured housing standards.

84.    Defendant Bosarge's, as the retailer, installer, and transporter of the manufactured home (Installer Certification No. 2620), similarly bears responsibility for the structural installation deficiencies reflected in the April 26, 2024 and May 22, 2024 AMHC inspection reports, including the missing shearwall pier, unhooked shearwall straps at the mateline, daylight endwalls, and gap in the mateline floor, all of which remained uncertified as corrected.

85.    As a direct and proximate result of Defendants' breaches of warranty and failure to comply with HUD manufactured housing standards, Plaintiff has suffered actual damages including receipt of a structurally deficient and non-code-compliant manufactured home, costs of attempted repair and remediation, and all other damages flowing therefrom.

86.    Plaintiff claims all actual, consequential, and compensatory damages allowable under law.

## COUNT VIII: UNJUST ENRICHMENT
*(Against ADECA, Lamar Construction, Mark Soileau, Cavco Manufacturing, and Bosarge's)*

87.    Plaintiff re-alleges and incorporates by reference paragraphs 1-38 as if fully set forth herein.

88.    Defendants received the benefit of CDBG-DR grant funds totaling $218,713.39, awarded for the purpose of providing Plaintiff Annie Blue with a new manufactured home, properly installed and meeting applicable standards.

89.    Instead of providing a new manufactured home of the quality and value represented, Defendants collectively delivered a used, defective, and improperly installed manufactured home to Plaintiff—a home of substantially lesser value while retaining the benefit of the full grant award amount. Upon information and belief, the total consideration paid to the contractor and its affiliates for the home actually delivered is substantially less than the $218,713.39 total grant award, resulting in a

windfall or net surplus to Defendants at Plaintiff's expense and the expense of the federal CDBG-DR program.

90.    It would be inequitable and unjust to permit Defendants to retain the benefit of these funds without delivering to Plaintiff the full value of what was contracted and represented namely, a new, habitable, properly installed manufactured home.

91.    As a direct result of Defendants' unjust enrichment, Plaintiff has suffered damages equal to the difference in value between the new home she was entitled to receive and the used, defective home she actually received, together with all consequential and incidental damages flowing therefrom.

92.    Plaintiff claims all damages allowable under law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Annie Blue respectfully prays that this Court grant the following relief against Defendants, jointly and severally where appropriate:

A.    Actual, compensatory, and consequential damages in an amount to be proven at trial, including but not limited to damages equal to 2.5 times the fair market value of a new conforming manufactured home as contracted (based upon the total grant award of $218,713.39), for a total of not less than $546,783.48, for breach of contract, fraud and fraudulent inducement, negligent misrepresentation, violations of the ADTPA, breach of implied warranty, and related claims;

B.      Damages of $50,000.00 for emotional distress and mental anguish suffered by Plaintiff as a result of Defendants' conduct, including but not limited to the delivery of a used and defective home, the failure to remediate defects despite notice, and the premature forced vacation of her prior home;

C.      Damages of $50,000.00 for relocation costs, loss of use, temporary housing expenses, and loss of time incurred by Plaintiff as a direct result of Defendants' representations and breach, including the approximately thirty (30) days of early vacancy induced by Mark Soileau's misrepresentation;

D.      Punitive damages against all Defendants whose conduct was willful, wanton, malicious, or deliberately indifferent to Plaintiff's rights;

E.      Injunctive relief directing ADECA and/or its contractor to fully remediate all deficiencies and defects identified in the replacement manufactured home (including all items identified in Plaintiff's January 15, 2025 letter, the April 26 and May 22, 2024 AMHC inspection reports, and the Gulf Coast Contracting Solutions invoice dated June 5, 2025), or alternatively, to provide Plaintiff with a conforming new manufactured home as originally contracted;

F.      Title correction - resolution of the discrepancy between the title issued and the manufactured home physically present on Plaintiff's property, and confirmation that the title accurately corresponds to Serial No. 9260AB;

G.      Provision of all required contractor insurance documentation and warranty documentation to which Plaintiff is entitled under the HRAP program and applicable law;

H.      Statutory and treble damages under RESPA (12 U.S.C. § 2607(d)) and the ADTPA (Ala. Code § 8-19-10), including civil penalties of up to $25,000.00 per violation under Ala. Code § 8-19-11, where applicable;

I.      Reasonable attorney's fees and costs of this action pursuant to 42 U.S.C. § 1988, the ADTPA (Ala. Code § 8-19-10), and any other applicable provision of law;

J.      Pre- and post-judgment interest at the maximum rate permitted by law; and

K.      Such other and further relief as this Court may deem just, equitable, and proper.

        Respectfully Submitted,

**/s/ Richard A. Rice**                          **/s/ Spencer E. Bowley**
Richard A. Rice                                  Spencer E. Bowley
ASB-8387-I66R                                    ASB-9281-Y44Q
rrice@rice-lawfirm.com                           spencer@rice-lawfirm.com

**THE RICE FIRM, LLC**
115 Richard Arrington Jr. Blvd. N
Birmingham, AL 35203
Ph: (205) 618-8733
Fax: (888) 391-7193

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 4th day of June, 2026, a true and correct copy of the foregoing *Complaint* was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and that a copy was served via U.S. Mail upon any parties not registered to receive electronic notice, including:

**Alabama Department of Economic and Community Affairs (ADECA)**
Attn: Director Kenneth W. Boswell
401 Adams Avenue
Montgomery, Alabama 36104

**Alabama Attorney General Steve Marshall**
501 Washington Avenue
Montgomery, Alabama 36104

**Lamar Construction Co. of Louisiana, L.L.C.**
c/o URS Agents, LLC
2 N Jackson Street Suite 605
Montgomery, AL 36104

**Mark Soileau**
389 Adlai Street
Breaux Bridge, LA 70517

**Cavco Manufacturing, LLC**
c/o Registered Agent Solutions Inc.
2 North Jackson Street Suite 605
Montgomery, AL 36104

**Bosarge's Mobile Home Sales, LLC**
c/o Calvin Bosarge Jr.
8550 Highway 90
Irvington, Alabama 36544

**/s/ Spencer E. Bowley**
Spencer E. Bowley